UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

|  |  |
|---|---|
| *In re* | **Chapter 11** |
| **ALLIANCE OPERATING CORPORATION** | **Case No. 89-14922-K** |
| **Reorganized Debtor.** |  |

**BURLINGTON RESOURCES OFFSHORE, INC.'s *EX PARTE* MOTION TO REOPEN THE CHAPTER 11 BANKRUPTCY CASE OF ALLIANCE OPERATING CORPORATION FOR LIMITED PURPOSES**

**NOW INTO COURT,** through its undersigned counsel, comes Burlington Resources Offshore, Inc. ("***Burlington***"), the successor by merger to "Reorganized Alliance," which files this *Ex Parte* Motion to Reopen the Chapter 11 Bankruptcy Case of Alliance Operating Corporation for Limited Purposes (the "***Motion***") and respectfully submits as follows:

## *EX PARTE* RELIEF

1.      Local Rule 9013-1(D) authorizes Burlington, as the successor to Reorganized Alliance, to file this Motion on an *ex parte* basis.

## RELIEF REQUESTED

2.      Burlington requests that the Court reopen the chapter 11 bankruptcy case of Alliance Operating Corporation (the "***Bankruptcy Case***") pursuant to 11 U.S.C. § 350(b) for the limited purposes of adjudicating the "*Motion to Interpret and Enforce Confirmation Order and Plan and for Sanctions*" (the "***Motion to Enforce***") a copy of which is attached hereto as <u>Exhibit 1</u>. The Motion to Enforce seeks an Order from the Court: (i) interpreting and enforcing the Confirmation Order, the Plan, and the Merger Agreement implemented pursuant to the Plan and Confirmation Order, (ii) enforcing the discharge and injunctions contained in the Confirmation Order and the Bankruptcy Code, and (iii) awarding sanctions against Avoca L.L.C f/k/a Avoca

Incorporated ("**Avoca**") for its continuing, knowing, and willful disregard of the Court's Confirmation Order.

3.      Burlington, which is the successor by mergers to Reorganized Alliance (beginning with the Merger Agreement implemented pursuant to the Confirmation Order and Plan) has been sued by Avoca in Louisiana State Court (the "**Lawsuit**") in direct violation of this Court's Confirmation Order and the releases, discharges, and injunctions contained therein, which clearly and unambiguously preclude, and prohibit, Avoca's Lawsuit against Burlington.

4.      Avoca's Lawsuit seeks a judgment against Burlington arising from Alliance's pre-petition obligations under a pre-petition oil and gas lease between Avoca and Alliance Operating Corporation (the "**Avoca Lease**"). In particular, Avoca alleges that Burlington inherited the obligation to plug and abandon the Avoca No. 1 Well (the "**Avoca Well**") drilled on the Avoca Lease by virtue of its status as a successor to Reorganized Alliance.

5.      However, the Plan and Confirmation Order clearly and unambiguously provide that Reorganized Alliance, *did not* receive any interest in the Avoca Lease or the Avoca Well, which Alliance had transferred prior to its Petition Date. Further, and more pointedly, the Confirmation Order clearly and unambiguously provides that, *even if Reorganized Alliance had received such an interest*: (i) all property interests which vested in Reorganized Alliance (now Burlington) under the Plan and Confirmation Order was "free and clear" of Avoca's claims, (ii) Avoca's claims were discharged, and (iii) Avoca's claims are expressly enjoined by the Confirmation Order.

6.      Avoca is aware of this Court's Confirmation Order yet persists in prosecuting its causes of action against Burlington, despite specific demand by Burlington to cease its litigation efforts prohibited by the Confirmation Order. Accordingly, the Bankruptcy Case should be

143049848v.1

reopened for cause under § 350(b) to allow Burlington to file the Motion to Enforce.[2] The reopening of the Bankruptcy Case will not require appointment of a trustee. *See* Federal Rule of Bankruptcy Procedure 5010.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This Court may finally adjudicate the matters raised in this Motion and the Motion to Enforce pursuant to 28 U.S.C. § 157(b)(1), and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (L), and (O). Venue is proper in this District pursuant to 28 U.S.C. § 1409.

8.      As the Supreme Court has recognized, this Court "plainly ha[s] jurisdiction to interpret and enforce its own prior orders." *Travelers Indem. Co. v. Bailey,* 557 U.S. 137, 151, 129 S.Ct. 2195, 2205 (2009) (Recognizing bankruptcy court's jurisdiction to issue "Clarifying Order" interpreting and enforcing its 1986 order enjoining claims). Further, this Court expressly retained jurisdiction in its Order Confirming Revised Second Amended Plan of Reorganization for Alliance Operation Corporation entered in the captioned case on June 25, 1992 (the "***Confirmation Order***") and pursuant to the Plan confirmed thereby.[3] A true and correct copy of the Confirmation Order bearing certification of the Deputy Clerk of the Court is attached hereto as Exhibit 2, and a true and correct copy of the Plan is attached hereto as Exhibit 3.

9.      Specifically, the Plan, which was "confirmed in all respects" provides for the Court's retention of broad jurisdiction as to the matters and transactions addressed therein. The Court's retained jurisdiction includes, specifically and without limitation, the jurisdiction to: (1)

---

[2] In the alternative, to the extent the Court determines that an adversary proceeding is required to seek the relief sought in the Motion to Enforce, Burlington requests that the Court reopen the Bankruptcy Case for the limited purpose of allowing Burlington to institute such an adversary proceeding.

[3] As set forth in the Confirmation Order, all capitalized terms used therein have the meanings ascribed to them in Alliance's Plan. *See* p. 14 ¶ 25 of the Confirmation Order, attached hereto as Exhibit 1.

3

ensure that Alliance and other parties in interest carry out the purpose, terms and intent of this Plan," (2) "Hear and determine all Claims which a party could have brought before the Confirmation of this Plan," (3) "Determine all questions and disputes regarding title to the assets of Alliance," (4) "Enforce and interpret the terms and conditions of this Plan," (5) "Enter any orders, including injunctions, necessary to enforce the terms of this Plan…," and (6) "Decide any disputes and enforce the terms and conditions of the Merger Agreement."[4]

10.     Confirmation Order which Burlington asks the Court to interpret and enforce further provides: "This Court retains all permissible jurisdiction over the Debtor, Reorganized Alliance, the Surviving Corporation… all creditors, limited partners and equity shareholders as described in Article VIII of the Alliance Plan."[5]

## STATUTORY BASES FOR RELIEF

11.     The relief sought pursuant to this Motion is authorized by 11 U.S.C. §§ 105(a), and 350(b). Bankruptcy Rules 5010 is applicable to this Motion. The Court should reopen the above-captioned case pursuant to 11 U.S.C. § 350(b) for the limited purpose of adjudicating the Motion to Enforce. Further, the Court should grant all relief appropriate under the premises under 11 U.S.C. § 105(a) to interpret and enforce the Court's prior Confirmation Order.

## FACTUAL BACKGROUND

### A. Burlington is the Successor by Merger to Reorganized Alliance.

10.     Through the transactions authorized under this Court's Orders and ultimately implemented pursuant to the Plan and Confirmation Order, together with subsequent corporate merger transactions, Burlington is the successor by multiple mergers to Reorganized Alliance. The history of these mergers is as follows:

---

[4] Exhibit 2, Plan at Article VIII ("Jurisdiction of the Court").
[5] *See* Exhibit 1, p. 13-14 at ¶ 20.

143049848v.1

- On June 25, 1992 pursuant to the Court's Confirmation Order, the Plan, and the Merger Agreement the Subject Property, which did not include the Avoca Lease or Avoca Well, vested in Reorganized Alliance.

- As authorized by the Court in the Confirmation Order, Reorganized Alliance and Gulfstream Resources, Inc. ("*Gulfstream*") merged, with Reorganized Alliance as the "*Surviving Corporation*" but continuing under the name "Gulfstream Resources, Inc."[6] A true and correct copy of the Merger Agreement is attached hereto as Exhibit 4.

- On June 3, 1996, Gulfstream then merged with Meridian Oil Offshore, Inc., with Meridian being the surviving entity.[7]

- On July 10, 1996, Meridian changed its name to Burlington Resources Offshore, Inc.[8]

**B. The Alliance Operating Bankruptcy, Plan and Confirmation Order.**

11. On December 19, 1989 (the "*Petition Date*"), Alliance Operating Corporation ("*Alliance*") filed a petition for relief in this Court under chapter 11 of the Bankruptcy Code. *See* Exhibit 5, "Disclosure Statement to Accompany Revised Second Amended Plan of Reorganization" (the "*Disclosure Statement*"). Prior to its Petition Date, Alliance owned and operated offshore oil and gas leases.[9]

12. Following several unsuccessful attempts to sell its assets, Alliance negotiated and filed a motion seeking authorization to enter into the "Amended and Restated Agreement and Plan of Merger" (the "*Merger Agreement*").[10] The Court approved Alliance's motion and authorized it to enter into the Merger Agreement by Order entered January 29, 1992.[11]

---

[6] Exhibit 4, Merger Agreement, Article 2(c); see also, Exhibit 2, Plan, at p. 5.
[7] Exhibit 10, Gulfstream/Meridian Merger Filings.
[8] Exhibit 11, Meridian Name Change.
[9] *Id.*
[10] *Id.*
[11] *Id. See also,* Exhibit 2, Confirmation Order at p. 2-3.

5

143049848v.1

13.     Following the Court's approval of the Merger Agreement, Alliance issued a Disclosure Statement and iterations of a plan. Ultimately, Alliance brought forth its Plan for confirmation.

### C.   The Confirmation Order Defines Which Assets Vested in Reorganized Alliance, and These Assets Did Not Include the Avoca Lease or the Avoca Well.

14.     The Plan and Confirmation Order implemented the previously-approved Merger Agreement. Under the Merger Agreement, Plan, and Confirmation Order, only certain assets specifically delineated on Exhibit A to the Merger Agreement and defined as the "*Subject Property*," were vested in Reorganized Alliance.[12] A true and correct copy of Exhibit A to the Merger Agreement can be found at Bates Labeled pages AVOCOP00000138-151 of Exhibit 4 hereto.

15.     The oil and gas interests included within Subject Property were limited to Alliance's interests in three fields – the Eugene Island 89 Field, the Eugene Island 205 Field, and West Cameron Block 2.[13] All assets of Alliance other than the specifically delineated "Subject Assets," were defined in the Disclosure Statement and Plan as "*Distributable Assets*" and were distributed to Alliance's creditors under the Plan. The Distributable Assets *never* vested in Reorganized Alliance and instead was distributed to creditors pursuant to the Confirmation Order and Plan.

16.     Immediately following the vesting of the Subject Property in Reorganized Alliance, Reorganized Alliance and Gulfstream Resources, Inc. ("*Gulfstream*") were to merge in accordance with the Plan.

17.     On June 25, 1992, the Court entered the Confirmation Order confirming the Plan. As evidence of the foregoing, the Confirmation Order provides:

---

[12] Exhibit 2, p. 3 at ¶ 3.
[13] Exhibit 4, at Exhibit A to Merger Agreement.

The Alliance Plan calls for certain assets described as the "Subject Property" as set forth in Exhibit A to the Amended and Restated Agreement and Plan of Merger ("Merger Agreement") (which is attached as Appendix A to the Alliance Plan) to be retained by the Reorganized Alliance. Reorganized Alliance will then merge (the "Merger") with Gulfstream Resources, Inc. ("Gulfstream") with Reorganized Alliance being the Surviving Corporation (the "Surviving Corporation"). **All assets of Debtor other than the Subject Property will be turned over to the Disbursement Committee to be distributed** in accordance with the Alliance Plan as amended by this Order of Confirmation.[14]

19.     Accordingly, under the Plan and Confirmation Order, only the Subject Property vested in Reorganized Alliance, and all other assets were turned over to the Disbursement Committee to be distributed to creditors. Following entry of the Confirmation Order, the Merger Agreement was consummated, the Subject Property vested in Reorganized Alliance, and Reorganized Alliance and Gulfstream merged. As the clear and unambiguous provisions of the Plan, Confirmation Order, and Exhibit A to the Merger Agreement demonstrate, the Subject Property does not include any interest in the Avoca Lease or the Avoca Well.

**D. The Confirmation Order Releases Burlington and its Predecessors from Alliance's Obligations, Binds Avoca, and Enjoins Avoca from Attempting to Enforce Alliance's Obligations Against Burlington and its Predecessors.**

20.     The Confirmation Order provides that the Plan is binding upon all creditors and parties in interest, to wit:

**The provisions of the Alliance Plan are binding upon** the Debtor, **creditors of Alliance**, the equity security holders and limited partners of the Alliance Partners **and all other parties in interest**, whether or not their claim, interests, or rights are impaired whether or not they have accepted or rejected the Alliance Plan.[15]

---

[14] Exhibit 2, Confirmation Order, p. 3 ¶ 3. (emphasis added). [The referenced amendments to the Plan are contained at pp. 6-8 (¶ 20) of the Confirmation Order, but none pertain to this Motion].

[15] Exhibit 2, Confirmation Order, p. 8 ¶ 2. (emphasis added).

143049848v.1

21.     The Confirmation Order also explicitly states that the Subject Property vested in Reorganized Alliance "free and clear" of any and all claims, liabilities, and other interests. Specifically, the Confirmation Order provides in pertinent part:

> Except as expressly provided in the Alliance Plan or in Section 1141 of the Bankruptcy Code, the Subject Property is hereby **vested in Reorganized Alliance as of the Effective Time free and clear of any and all** liens, mortgages, **claims**, security interests, **liabilities, interests or encumbrances of any nature** (subject to the rights of the parties to the Merger Agreement)…**The provisions of this Paragraph 3 are self-executing** and **neither the Debtor, Reorganized Alliance, Gulfstream, the Surviving Corporation nor any other person or entity shall be required to obtain, execute or file releases,** termination statements, assignments, consents, or other instruments in order to effectuate and implement said provisions. Notwithstanding the self-executing nature of this provision, the Debtor, Reorganized Alliance, or the Surviving Corporation may demand and shall be entitled to receive and file such releases, termination statements, assignments, consents or any other instruments including those required under Paragraph 9 hereof or as may be appropriate to implement the provisions of the Plan.[16]

22.     Accordingly, while the Avoca Lease and Avoca Well *did not* vest in Reorganized Alliance, even if those assets *had* vested in Reorganized Alliance, they would have done so free and clear of any and all "liens, mortgages, **claims**, security interests, **liabilities**, interests, or encumbrances **of any nature**." Further, the Confirmation Order provides that the foregoing provision is self-executing and operate to the protection of Reorganized Alliance, the Surviving Corporation and any other person without any requirement of obtaining an express release from any creditor or claimant.

23.     The Confirmation Order also expressly discharged all debts of Alliance and protects Reorganized Alliance and the Surviving Corporation from such claims. Specifically, the Confirmation Order provides:

---

[16] <u>Exhibit 2</u>, Confirmation Order, p. 8-9 ¶ 3. (emphasis added).

8

143049848v.1

As provided in Article X of the Alliance Plan and except as otherwise expressly provided in Section 1141 of the Bankruptcy Code, **all debts** (as that term is defined in the Bankruptcy Code) **and Claims against Alliance or any of its properties**, and Interests, **which arose prior to the Effective Time**, including any debts of its kind specified in Section 502(g), (h), or (i) of the Bankruptcy Code, and any interest thereon, **are hereby discharged. Neither Reorganized Alliance nor the Surviving Corporation shall have any liability or obligation with respect to any such debts, Claims or Interests,** and the treatment received by the holders thereof under the Alliance Plan shall be deemed full and final satisfaction thereof.[17]

24. In addition to discharging debts and claims against Alliance and expressly providing that Reorganized Alliance and the Surviving Corporation were not responsible for those liabilities, the Confirmation Order enjoined the prosecution of any such claims and causes of action. Specifically, the Confirmation Order provides:

**All creditors**, equity security holders, limited partners **and other parties in interest who have debts, liabilities or obligations which are discharged, satisfied or released**, or whose interests are voided or terminated, **are enjoined from instituting or continuing any action or employing any process or engaging in any act to collect, or enforce any rights with respect to, any such debts, liabilities, obligations, or interests as against the Debtor, Reorganized Alliance, the Surviving Corporation or any of their respective properties**. Further, except to the extent otherwise provided in the Alliance Plan or in paragraph 11 hereof, **all persons or entities shall be permanently enjoined on and after the date hereof** (i) **from commencing or continuing in any manner, any action or proceeding of any kind with respect to any Claim or Interest arising prior to the Effective Time against Debtor, Reorganized Alliance or the Surviving Corporation**, (ii) from creating, perfecting or enforcing any encumbrances of any kind against Debtor, Reorganized Alliance, or the Surviving Corporation, or against any of their respective properties, (iii) from asserting any setoff, right of subrogation or recoupment of any kind with respect to any debt, Claim or Interest arising prior to the Effective Time against any obligations due the Surviving Corporation, and (iv) from performing any act, in any manner, in any place whatsoever, that

---

[17] Exhibit 2, Confirmation Order, p. 10 ¶ 5. (emphasis added).

does not conform to or comply with the provisions of the Alliance Plan or this Order.[18]

25.     Finally, this Court expressly retained "all permissible jurisdiction" over the Debtor, Reorganized Alliance, and the Surviving Corporation. Specifically, the Plan provides that the Court's retained jurisdiction includes, without limitation, the jurisdiction to: (1) "ensure that Alliance and other parties in interest carry out the purpose, terms and intent of this Plan," (2) "Hear and determine all Claims which a party could have brought before the Confirmation of this Plan," (3) "Determine all questions and disputes regarding title to the assets of Alliance," (4) "Enforce and interpret the terms and conditions of this Plan," (5) "Enter any orders, including injunctions, necessary to enforce the terms of this Plan…," and (6) "Decide any disputes and enforce the terms and conditions of the Merger Agreement."[19]

26.     Furthermore, the Confirmation Order provides:

> This Court retains all permissible jurisdiction over the Debtor, Reorganized Alliance, the Surviving Corporation, the Disbursement Agent, the Disbursement Committee, all creditors, limited partners and equity shareholders as described in Article VIII of the Alliance Plan. This Court's jurisdiction shall include, without limitation those matters necessary to administer the Estate.[20]

**E. The Avoca Lease Was Transferred by the Debtor Prior to the Petition Date and Never Became Estate Property.**

27.     On August 14, 1987, prior its Petition Date, Alliance entered into the Avoca Lease. The Avoca Lease covered a 267.33 acre tract of land in St. Mary Parish and the Avoca Well. *See* Exhibit 6, Avoca Lease.

---

[18] Exhibit 2, Confirmation Order, p. 11-12 ¶ 10. (emphasis added). Paragraph 11 of the Confirmation Order contains limited "carve-outs" to the injunctions set forth in ¶ 10, but none are pertinent to this Motion.
[19] Exhibit 3, Plan at Article VIII ("Jurisdiction of the Court").
[20] Exhibit 2, Confirmation Order, p. 13-14 ¶ 20.

10

143049848v.1

28.     On May 22, 1989, also prior to its Petition Date, Alliance transferred the Avoca Lease, inclusive of its interest in the Avoca Well, to Delta Operating Corporation ("***Delta***"). *See* Exhibit 7, Assignment and Bill of Sale between Alliance and Delta, at Exhibit A, Lease No. 1.[21] Accordingly, as of the Petition Date, Alliance did not own record title interest in the Avoca Lease or the Avoca Well. These assets were not property of the estate under 11 U.S.C. § 541(a).

29.     While Alliance did institute an avoidance action to recover the Avoca Lease, and other oil and gas properties, on the basis that it was transferred to insiders for no consideration or insufficient consideration, this avoidance action was settled, and Delta retained title to the lease and well. Accordingly, the Avoca Lease and Avoca Well did not become estate property pursuant to 11 U.S.C. § 541(a)(3).

### F.   The Avoca Lease Never Vested in the Reorganized Debtor.

29.     The Plan and Confirmation Order specify that only the Subject Property, which did not include the Avoca Lease or Avoca Well, vested in the Reorganized Debtor. The clear and unambiguous provisions of the Plan and Confirmation Order provide that only the property listed on Exhibit A to the Merger Agreement vested in the Reorganized Debtor. The Avoca Lease is not listed on Exhibit A and, therefore, never vested in the Reorganized Debtor as a matter of law.

30.     Indeed, the Subject Property which vested in Reorganized Alliance did not include, and could not have included, the Avoca Lease or the Avoca Well drilled thereon. The Avoca Lease had been transferred by Alliance to Delta prior to the Petition Date. Further, while Alliance had filed an avoidance action, Delta retained title to the Avoca Lease pursuant to that settlement. In fact, Avoca admits that Delta produced the Avoca Well until 2013.

---

[21] The Assignment of the Avoca Lease by Alliance to Delta expressly included "all interests in the wells," including the Avoca No. 1 Well.

11

143049848v.1

31.     Furthermore, the settlement proceeds[22] and any and all remaining claims in the avoidance action were expressly included within "***Distributable Assets***" distributed to creditors under the Plan. In fact, any interest that the Alliance estate had in the avoidance action, including any right to recover the lease and/or well, is expressly listed as within the "***Distributable Assets***" on Exhibit C to the Plan. A true and correct copy of Exhibit C to the Plan can be found at Bates labeled page AVOCOP00000166 of Exhibit 3 hereto.

32.     The facts that: (1) title to the Avoca Lease remained with Delta and (2) inclusion of any remaining claims the Avoca Lease within the definition of Distributable Assets are further confirmation that the Avoca Lease was not, and could not have been, included within the Subject Property vested in Reorganized Alliance.

**G.  Avoca Has Sued Burlington, as Successor to Reorganized Alliance, Contending that Alliance's Obligations Survived the Alliance Bankruptcy and Passed to Burlington.**

33.     On or about January 24, 2023, Avoca instituted the Lawsuit by filing a Petition in the 16th Judicial District Court for the Parish of St. Mary, State of Louisiana against Burlington and others. With respect to the Avoca Lease and Avoca Well, Avoca alleges that Burlington and Delta (Alliance's pre-petition transferee) are obligated under the pre-petition 1987 Avoca Lease to plug and abandon the Avoca Well.[23] A true and correct copy of the Lawsuit is attached hereto as Exhibit 8.

34.     Avoca's Lawsuit admits that 100% of Alliance's interest in the Avoca Lease was transferred by Alliance to Delta prior to Alliance's Petition Date and, further, admits that Delta has operated the Avoca Well since the date of that assignment.[24]

---

[22] Less $180,000 which Alliance assigned to another creditor pursuant to a court approved settlement.
[23] Exhibit 8, Lawsuit, at ¶ 11-13.
[24] Exhibit 8, Lawsuit, at ¶ 12-13.

35. Nevertheless, Avoca alleges that Burlington, which has never been a party to the Avoca Lease, is liable to plug and abandon the Avoca Well based on nothing more than its status as successor by merger to Reorganized Alliance. Avoca makes these allegations despite its longstanding knowledge of the Alliance bankruptcy, the Plan, the Confirmation Order, and the terms and provisions of the Merger Agreement and its exhibits.[25]

36. On January 10, 2025, Burlington made demand on Avoca to dismiss Burlington from the Lawsuit. A true and correct copy of this demand is attached hereto as <u>Exhibit 9.</u> However, Avoca has failed to comply. Accordingly, Burlington has been forced to seek relief from this Court.

<u>**ARGUMENT AND AUTHORITIES**</u>

**A. The Court Has Jurisdiction to Interpret and Enforce Its Prior Orders, Including the Confirmation Order and the Plan and Merger Agreement Implemented Pursuant to the Confirmation Order.**

37. The Court's jurisdiction to interpret and enforce its own orders cannot be disputed. As the Supreme Court has recognized, this Court "plainly ha[s] jurisdiction to interpret and enforce its own prior orders." *Travelers Indem. Co. v. Bailey,* 557 U.S. 137, 151, 129 S.Ct. 2195, 2205 (2009) (Recognizing bankruptcy court's jurisdiction to issue "Clarifying Order" interpreting and enforcing its 1986 order enjoining claims). Federal courts have "unquestionable power to enforce their own decrees." *Matter of RE Palm Springs II, LLC,* 106 F.4th 406, 413 (5th Cir. 2024). When it comes to enforcing or effectuating a court's prior judgment, no independent basis for jurisdiction is required. *Id.* Rather, the scope of that ancillary jurisdiction is determined by the scope of the court's predicate jurisdiction to enter the subject order. *Id.* As it is beyond question that the Court

---

[25] The Merger Agreement, Plan, Disclosure Statement, and Confirmation Order were all produced to Avoca during discovery in the Lawsuit, on or about December 1, 2023. Further, Avoca makes direct references to these documents in its May 31, 2024 motion for summary judgment. Furthermore, Burlington again provided Avoca with the Confirmation Order and pertinent sections of the Merger Agreement on January 10, 2025 in connection with its demand that Avoca cease its improper litigation by no later than January 16, 2025.

had the jurisdiction to enter the Confirmation Order, it is equally beyond question that the Court has the jurisdiction to interpret and enforce it.

38.    Further, this Court expressly retained jurisdiction in its Confirmation Order and pursuant to the Plan confirmed thereby.[26] In fact, the Court specifically retained the jurisdiction to decide the very same matters presented by this Motion: to ensure the purpose, terms and intent of the Plan, to determine all questions and disputes regarding title to the debtor's assets, to enforce and interpret the terms and conditions of the Plan, to enter any orders, "including injunctions," necessary to enforce the terms of the Plan, and to decide any disputes and enforce the terms and conditions of the Merger Agreement.[27] The Court's retained jurisdiction also specifically extends to Burlington, as the successor to Reorganized Alliance, as well as to all creditors.[28]

**B.  The Court Should Reopen the Alliance Bankruptcy Case for the Limited Purpose of Granting the Relief Sought Herein.**

39.    Section 350(b) of the Bankruptcy Code provides that "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). Further, Bankruptcy Rule 5010 provides that a motion to reopen may be brought by a debtor or any other party in interest.

40.    The Fifth Circuit Court of Appeals has not adopted a formal test for determining "cause" for reopening a closed bankruptcy case. It has noted, however, that "[t]he phrase 'or other cause' as used in § 350(b) is a broad term which gives the bankruptcy court discretion to reopen a closed estate or proceeding when cause for such reopening has been shown. This discretion depends upon the circumstances of the individual case and accords with the equitable nature of all

---

[26] As set forth in the Confirmation Order, all capitalized terms used therein have the meanings ascribed to them in Alliance's Plan. *See* p. 14 ¶ 25 of the Confirmation Order, attached hereto as <u>Exhibit 1</u>.

[27] <u>Exhibit 3</u>, Plan at Article VIII ("Jurisdiction of the Court").

[28] <u>Exhibit 2</u>, Confirmation Order, p. 13-14 at ¶ 20.

14

bankruptcy court proceedings." *In re Case*, 937 F.2d 1014, 1018 (5th Cir. 1991); *see also*, *In re Lazy Days' RV Center, Inc.,* 724 F.3d 418, 422-23 (3rd Cir. 2013).

41.     Burlington is the successor by mergers to Reorganized Alliance and a party in interest with standing to bring this Motion. Further, substantial cause exists to reopen Alliance Operating Corporation's chapter 11 case to interpret and enforce the Confirmation Order and Plan, inclusive of the incorporated Merger Agreement.

42.     It is of utmost concern to bankruptcy courts, bankrupt debtors, and persons who transact with estates, particularly where those transactions are blessed by court orders, to protect and enforce the sanctity and finality of proceedings before bankruptcy courts. Here, Avoca's Lawsuit ignores the clear and unambiguous provisions of the Confirmation Order, Plan, and Merger Agreement, and attempts to pursue Burlington for causes of action which are directly controverted, precluded, and enjoined by the Court's Confirmation Order. Avoca's action also presents a direct affront to the integrity of bankruptcy proceedings (including the Court's authority pursuant to 11 U.S.C. §§ 363, 514, 1123, 1129, and 1141) and their purpose to provide debtors such as Reorganized Alliance with a "fresh start" upon emerging from bankruptcy.

43.     Courts have frequently found that the need for interpretation and enforcement of transactions implemented in the plan process constitute cause for reopening a case. For example, in *Lazy Days,* the Third Circuit held that the bankruptcy court properly reopened the bankruptcy case to interpret a settlement agreement approved as part of the plan process when post-bankruptcy state court litigation ensued between the parties whose rights were affected by the settlement. *See also, In re LandSource Communities Development, LLC,* 834 Fed.Appx 747 (3rd Cir. 2020) (same); *In re Navilus Tile, Inc.,* 634 B.R. 847 (Bankr. S.D.N.Y. 2021) (reopening case to enforce discharge

and plan injunction and finding reorganized debtor would be prejudiced by having to litigate these issues in state court where bankruptcy court retained jurisdiction over the issues).

44. The circumstances of this case warrant reopening of the case to grant the relief sought herein in accord with the principles of "the equitable nature of all bankruptcy court proceedings." While the Fifth Circuit had not adopted a formal, multi-factor test to determine whether cause exists to reopen a case, the factors that have been applied by other courts may be of some use in evaluating the equities of this particular case and demonstrate that reopening the Alliance case is warranted. Factors that have been evaluated by courts both outside and within the Fifth Circuit include, but are not limited to: (1) whether it is clear at the outset that no relief would be forthcoming to movant by granting the motion to reopen; (2) the length of time that the case was closed; (3) whether a non-bankruptcy forum has jurisdiction to determine the issue which is the basis for reopening the case; (4) whether prior litigation in the bankruptcy court implicitly determined that a state court would be the appropriate forum; (5) whether any parties would suffer prejudice should the court grant or deny the motion to reopen; and (6) the extent of the benefit to the movant by reopening. *See, e.g, In re Odin Demolition & Asset Recovery, LLC*, 544 B.R. 615, 628-29 (Bankr. S.D. Tex. 2016) (internal citations omitted). Consideration of these factors further confirms that cause exists to reopen the Alliance bankruptcy proceedings.

(i)     It is clear at the outset that relief *would be* forthcoming in response to Burlington's Motion.

45. Upon the Court's reopening of the Alliance bankruptcy case, Burlington would be entitled to the additional relief sought in the Motion to Enforce under the clear and unambiguous provisions of the Confirmation Order, the Plan, and the Merger Agreement. Under a plain reading of those unambiguous plan documents and this Court's Confirmation Order, Burlington's predecessor, Reorganized Alliance, did not receive – and therefore Burlington has never received

– any interest in the Avoca Lease or the Avoca Well. To the contrary, to the extent of any remaining estate interest therein despite the debtor's prepetition transfer, any interest in those assets was defined as "Distributable Assets" under the Plan and Confirmation Order and delivered to the Disbursement Committee for distribution to creditors. Because Avoca's Lawsuit is predicated on allegations as to chain of title of the Avoca Lease and Avoca Well which are directly contradicted by the Confirmation Order, Plan, and Merger Agreement, the Court is fully able to grant Burlington the relief which it seeks. Thus, this factor weighs heavily in favor of reopening the case.

(ii)    While the case has been long-closed, Burlington presents a compelling reason for reopening.

46.    The Alliance bankruptcy case has been closed for over thirty (30) years; however, this Motion is made necessary as a result of Avoca's 2023 Lawsuit in which the issues presented in this Motion have only recently come to a head. As is common with long-life assets, such as oil and gas leases, the disputes regarding Reorganized Alliance's (and, thus, Burlington's) obligations for plugging and abandonment did not themselves arise until decades after entry of the Confirmation Order and implementation of the Plan and Merger Agreement.

47.    Moreover, there is no time limitation imposed on a motion to reopen. To the contrary, courts have held that delay is only relevant to the determination of cause for reopening a bankruptcy case where the delay results in "meaningful prejudice" to the other party. *In re Stein*, 394 B.R. 13, 16 (Bankr. E.D.N.Y. 2008); *see also Batstone v. Emmerling (In re Emmerling)*, 223 B.R. 860, 865 (2d Cir. BAP 1997). As discussed below, Avoca will not suffer any prejudice if this case is reopened. On the other hand, Burlington will suffer substantial prejudice if it is not.

48.    The Fifth Circuit has noted that, "The longer the time between the closing of the estate and the motion reopen, . . . the more compelling the reason for reopening the case should be." *Case*, 937 F.2d at 1918. Here, Burlington presents perhaps *the most compelling* reason why

17

a case should be reopened – to enforce the Court's Confirmation Order that the Court expressly retained jurisdiction to enforce and to protect the integrity of the "fresh start" that was granted to Reorganized Alliance under the Bankruptcy Code. This compelling reason for reopening the case is even further enhanced by the Court's broad retention of jurisdiction, including without limitation, for the specific purposes of determining matters of title, enforcing and interpreting the Plan, issuing injunctions, and deciding any disputes and enforcing the terms of the Merger Agreement.

49. Burlington is the successor to the Reorganized Alliance, and has been sued based upon nothing more than its relationship to Reorganized Alliance. Permitting Avoca to persist with a Lawsuit against Burlington that runs directly counter to the Confirmation Order and Plan would deny Reorganized Alliance the fresh start for chapter 11 debtors envisioned under the Bankruptcy Code and which represents the very foundation of that legislation and this Court's authority. *Marrama v. Citizens Bank of Massachusetts,* 549 U.S. 365, 367, 127 S.Ct. 1105, 1107 (2007) ("The principal purpose of the Bankruptcy Code is to grant a "fresh start" to the "honest but unfortunate debtor.").

50. Moreover, Avoca's lawsuit was not filed until 2023, and Burlington clearly could have had no expectation that intervention by this Court would be necessary prior to that. It was not until the completion of discovery and Avoca's filing of a motion for summary judgment on May 31, 2024 (originally scheduled for hearing in December of 2024 and now continued to March 2025) that these issues acutely came to a head. Burlington has supplied Avoca copies of the pertinent documents, including this Court's Confirmation Order, Plan, and Merger Agreement (both in discovery and via written demand dated January 10, 2025) and demanded that Avoca withdraw its lawsuit. However, Avoca has refused to comply or otherwise acknowledge the

preclusive effects of this Court's Confirmation Order, Plan, and Merger Agreement, thus necessitating this Motion. For the foregoing reasons, this factor also weighs in favor of reopening the case.

> (iii) <u>The Motion to Enforce is a core proceeding, this Court is the only court with power to enforce its injunctions, and this Court is also in the best position to interpret the Confirmation Order, Plan, and Merger Agreement.</u>

50.     An action to enforce the provisions of a confirmed plan, including the question whether subsequent litigation is barred by the plan is a core proceeding. *Matter of National Gypsum Co.,* 118 F.3d 1056 (5th Cir. 1997). The Fifth Circuit recognized that, "the discharge injunction granted by section 524(a) is a substantive right conferred by the Bankruptcy Code, often enforced by a motion for contempt." *Id.* at 1063, citing *In re Texaco,* 182 B.R. 937, 944 (Bankr. S.D.N.Y. 1995) ("There can be no question that a proceeding such as this [motion for contempt], to enforce and construe a confirmation order issued by this Court in this case, constitutes a proceeding 'arising in or related to' a case under title 11."). Thus, the dispute between Avoca and Burlington, as successor to Reorganized Alliance, constitutes a core proceeding under 28 U.S.C § 157(b) because it "arises in" a bankruptcy case.  Resolution of the dispute implicates "authority [that] can be exercised only in the context of a bankruptcy case."  *U.S. Brass Corp. v. Travelers Ins. Grp., Inc. (In re U.S. Brass Corp.)*, 301 F.3d 296, 306 (5th Cir. 2002).

51.     Furthermore, this Court is the *only court* with the power to enforce its injunctions and best suited to evaluate the application of the injunctive effect of a confirmed plan of reorganization under the Bankruptcy Code as well as the Confirmation Order, Plan, and Merger Agreement. The Fifth Circuit's holding in *Waffenschmidt v. MacKay,* reasoned that enforcement of a federal court's injunction must be brought in the court that issued the injunction. 763 F.2d 711, 716 (5th Cir. 1985). This is because violation of the injunction is an affront to the court issuing

the order. *Id.* Other Circuits which have considered the issue are in accord with this holding. For example, the Eleventh Circuit reached the same conclusion (citing *Waffenschmidt* among other authorities), recognizing that "it would wreak havoc on the federal courts to leave enforcement of the injunctive order of a bankruptcy court in one district to the interpretive whims of a bankruptcy court in another district." *Alderwoods Group, Inc. v. Garcia,* 682 F.3d 958, 970 (11th Cir. 2012).

52. The argument here is even more compelling. *Alderwoods* reasoned that a bankruptcy court which issued an injunctive order should enforce it, rather than leaving the matter *to another bankruptcy court* with presumably equal expertise in bankruptcy. Yet here, if Burlington cannot obtain its relief in this Court, it will be subject to the "interpretive whims" of a *state court* which is unfamiliar with the nature and nuances of bankruptcy proceedings, the Bankruptcy Code, and implementation of confirmation orders, plans, and attendant transactional documents. Accordingly, this factor weighs heavily in favor of reopening the case.

(iv) No prior litigation before this Court suggested that any other court would be the appropriate forum to determine matters related to the Confirmation Order and Plan, and, to the contrary, this Court expressly retained jurisdiction over such matters.

53. No prior litigation before this Court suggested that any other court would be the appropriate forum to determine the matters presented by this Motion. Quite the contrary, this Court expressly retained jurisdiction to adjudicate those matters via the broad retention of jurisdiction provisions in the Plan and Confirmation Order. Accordingly, this factor also weighs heavily in favor of reopening the case.

(v) No person will be prejudiced by the reopening of the case, and Burlington will be significantly prejudiced if the case is not reopened.

54. Avoca will not be prejudiced by Burlington's request to reopen this case or this Court's adjudication of the Motion to Enforce. To the contrary, the relief sought herein will quickly resolve what might otherwise engender years of litigation and great expense. As noted herein,

20

143049848v.1

Burlington has reached out to Avoca and provided Avoca with this Court's Confirmation Order, the Plan, and the Merger Agreement in an effort to avoid further litigation. However, those requests have been ignored by Avoca, and it appears at this point that Avoca insists on legal action. Because legal action has become necessary, no party will be prejudiced by litigating in this Court, which expressly retained jurisdiction to address the matters raised by Avoca's allegations. Additionally, there is no trial date set in connection with the Lawsuit and no scheduling order entered in the case.

55.     While Avoca will not be prejudiced by the reopening of the case, Burlington will suffer significant prejudice if the case is not reopened. *In re Navilus Tile, Inc.,* 634 B.R. 847 (Bankr. S.D.N.Y. 2021) (reopening case to enforce discharge and plan injunction and finding reorganized debtor would be prejudiced by having to litigate these issues in state court where bankruptcy court retained jurisdiction over the issues); *see also, In Re Fibermark, Inc.*, 369 B.R. 761, 769 (Bankr. D. Vt. 2007)(noting the bankruptcy court's familiarity with the events of the bankruptcy case and with the matters sought to be adjudicated if the bankruptcy case is reopened placed the court in the best position to adjudicate the dispute expeditiously).

56.     Considering that this Motion only seeks to reopen the case to enforce the Court's Confirmation Order, which is determinative of the matters Avoca alleges, Avoca cannot claim prejudice. Additionally, Avoca has sued Burlington based on nothing more than its status as successor to Reorganized Alliance (a reorganized debtor before this Court), and Avoca has willfully ignored the rulings of this Court which preclude the relief it seeks (both from the standpoint of title and express limitation of the assets which vested in Reorganized Alliance under the Confirmation Order and Plan and based on the discharge and injunction provisions of the Confirmation Order and Plan). Burlington will suffer substantial prejudice in the event this Motion is not granted.  Therefore, this factor also weighs heavily in favor of reopening.

143049848v.1

(vi)     Reopening the case will provide Burlington the finality that was intended in the Plan and Confirmation Order and be liberated from harassing litigation which is in direct contravention of the terms of the Plan and the provisions of the Confirmation Order.

57.     Despite Burlington's provision to Avoca of the Court's Confirmation Order, Plan, and Merger Agreement – all of which clearly and unambiguously demonstrate that Avoca's claims have no merit – Avoca persists in its litigation against Burlington based on nothing more than Burlington's status as the successor to Reorganized Alliance. Specifically, Avoca contends that Burlington is solidarily liable with Alliance's pre-petition transferee based on "chain of title" allegations which ignore Alliance's bankruptcy, ignore the termination of Alliance's existence by the Confirmation Order, ignore the creation of Reorganized Alliance pursuant to the Plan and Confirmation Order, ignore the express delineation of assets that vested in Reorganized Alliance under the Plan and Confirmation Order, ignore the express exclusion of assets from vesting in Alliance under the Plan and Confirmation Order, and ignore the balance of the Court's order. The Orders of this Court dictate which property vested in Reorganized Alliance, and which property did not, and therefore limit which property interests can be attributed to Burlington, as the successor to Reorganized Alliance. This Court's Confirmation Order, and the Plan and Merger Agreement implemented thereunder, conclusively demonstrate Avoca's claims are entirely without merit. As a result of Avoca's failure to dismiss its claims against Burlington, Burlington has been compelled to seek relief from this Court. This factor weighs heavily in favor of reopening the case.

## **NOTICE**

62.     Burlington is serving Avoca and the United States Trustee with this *ex parte* Motion. Considering the premises and the relief requested herein, Burlington submits that the foregoing constitutes sufficient notice of this Motion, which the Local Rules permit *ex parte*.

143049848v.1

**CONCLUSION**

For the foregoing reasons, Burlington, as the successor to Reorganized Alliance, respectfully that the Court reopen the above-captioned bankruptcy proceedings, grant the relief sought herein, and enter any and all additional relief to Burlington which is appropriate under the facts, applicable law, and equity.

Dated:  January 27, 2025                                   Respectfully submitted by:

*/s/ Jason M. Cerise*
Omer F. Kuebel III (La. #21682)
Jason M. Cerise (La. #28526)
**TROUTMAN PEPPER LOCKE LLP**[29]
601 Poydras Street, Suite 2660
New Orleans, Louisiana 70130-6036
Telephone: (504) 558-5100
Fax: (504) 910-6847
rick.kuebel@troutman.com
jason.cerise@troutman.com

*Attorneys for Burlington Resources*
*Offshore, Inc.*

---

[29] Effective January 1, 2025, Locke Lord LLP merged with Troutman Pepper Hamilton Sanders LLP, and the combined firm is referred to as "Troutman Pepper Locke LLP."

23

## CERTIFICATE OF SERVICE

This is to certify that a true copy of the foregoing, with exhibits, was served on January 27, 2025 on the following parties in the following manner:

<u>Via Certified Mail, Return Receipt Requested To:</u>
Avoca, LLC
Care of Its Registered Agent:
MILLING, BENSON, WOODWARD, LLP
68031 Capital Trace Row
Mandeville, LA 70471

Avoca, LLC
Through Its State Court Counsel:
MILLING BENSON WOODWARD, LLP
Attn: C. Randall Loewen
68031 Capital Trace Row
Mandeville, LA 70471

Avoca, LLC
Through Its State Court Counsel:
MILLING BENSON WOODWARD, LLP
Attn: Kenneth R. Whittle
68031 Capital Trace Row
Mandeville, LA 70471

Avoca, LLC
Through Its State Court Counsel:
MILLING BENSON WOODWARD, LLP
Attn: Andrew C. Wilson
68031 Capital Trace Row
Mandeville, LA 70471

<u>Via U.S. Mail To:</u>
Office of the United States Trustee
600 S. Maestri Place
Suite 840-T
New Orleans, LA 70130

<u>Via Email To:</u>
Avoca, LLC
Through Its State Court Counsel:
MILLING BENSON WOODWARD, LLP
Attn: C. Randall Loewen
rloewen@millinglaw.com

24

143049848v.1

Avoca, LLC
Through Its State Court Counsel:
MILLING BENSON WOODWARD, LLP
Attn: Kenneth R. Whittle
kwhittle@millinglaw.com

Avoca, LLC
Through Its State Court Counsel:
MILLING BENSON WOODWARD, LLP
Attn: Andrew C. Wilson
awilson@millinglaw.com

/s/ Jason M. Cerise

Jason M. Cerise

143049848v.1